IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
SEP 11 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, </br> Plaintiff, </br></br> v. </br></br> THE ARGENTINE REPUBLIC, </br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) Case No. 1:12cv99 </br> ) </br> ) </br> ) </br> ) </br> ) |

## MEMORANDUM OPINION

Plaintiff in this unusual case seeks recognition or confirmation—but not enforcement—of a 2.8 million dollar arbitral award in favor of plaintiff against defendant, the Argentine Republic, pursuant to The Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention"), Aug. 27, 1965, 17.1 U.S.T. 1270 (1966). Defendant seeks threshold dismissal on subject matter and personal jurisdiction, as well as venue grounds, arguing that these essential prerequisites neither exist nor have been properly pled.

For the reasons that follow, the motion must be denied in part and granted in part. It must be denied insofar as there is both subject matter and personal jurisdiction, albeit inartfully pleaded. But the motion must be granted in all other respects as the only appropriate venue for plaintiff's action is the United States District Court for the District of Columbia, as prescribed by 28 U.S.C. § 1391(f)(4). Given this, it is appropriate to transfer this matter to that forum pursuant to 28 U.S.C. § 1406.

I.

The pertinent facts are undisputed and may be succinctly stated. Plaintiff Continental Casualty Company ("Continental") is an Illinois corporation, engaged in the insurance business,

with a principal place of business in Chicago, Illinois. The Argentine Republic ("Argentina") is a foreign sovereign state.

Over a three-year period, Continental purchased virtually 100% of an Argentine worker's compensation insurance company. Continental alleged that a series of actions by Argentina caused Continental to suffer a substantial loss in this investment in violation of Continental's rights as an investor as created by this country's Treaty with Argentina Concerning the Reciprocal Encouragement and Protection of Investment, U.S.–Arg., Nov. 14, 1991, S. Treaty Doc. No. 103–2 (1991). Continental then requested arbitration of this dispute by the Internal Centre for Settlement of Investment Disputes (the "Centre"). The Centre then initiated the appropriate procedures for organizing an arbitral tribunal. This tribunal, which both parties agreed was properly constituted under the relevant provisions of the ICSID Convention and the ICSID Arbitration Rules, issued an Award in favor of Continental in the sum of 2.8 million dollars with compound interest. Both parties then sought, and received, a "rectification" of the Award,[1] which resulted in modifications to the Award, including a requirement that Continental issue a letter to Argentina authorizing the release of certain assets upon payment of the Award. Continental and Argentina then filed applications for annulment of the Award pursuant to Article 52(1) of the ICSID Convention.[2] The Centre then stayed the Award under Article 52(5),[3]

---

[1] A "rectification", i.e., correction, may be requested to "rectify any clerical, arithmetical or similar error in the award." ICSID Convention, Art. 49(2).

[2] Article 52(1) permits either party to request an annulment on "one or more of the following grounds:
    (a) that the Tribunal was not properly constituted;
    (b) that the Tribunal manifestly exceeded its powers;
    (c) that there was corruption on the part of a member of the Tribunal;
    (d) that there has been a serious departure from a fundamental rule or procedure; or
    (e) that the award has failed to state the reasons on which it is based."

pending the resolution of the annulment applications. Following proceedings on those applications,[4] the applications were dismissed and the stay of enforcement was lifted, thereby ending the arbitral proceedings.[5]

Continental now brings this suit, seeking confirmation and recognition of the Award, which Continental specifically claims is the sum of 2.8 million dollars plus continued interest at the rate for the 6 month London Interbank Offered Rate, as published in the Financial Times, plus two percent, compounded annually from January 1, 2005 until payment.

## II.

Resolution of the subject matter jurisdiction question is informed by a brief description of the ICSID Convention and procedures. The ICSID Convention was designed to foster a "favorable investment climate" by increasing "the confidence on the part of investors . . . that disputes between investor and host government can be settled in an orderly and impartial manner." *Convention on the Settlement of Investment Disputes: Hearing on H.R. 15785 Before the Subcomm. on Int'l Orgs. and Movements of the Comm. on Foreign Affairs*, 89th Cong. (1966) (statement of Andreas F. Lowenfeld, Deputy Legal Adviser, Dept. of State) [*Hearings*]. The ICSID Convention established the Centre to provide a forum "for conciliation and arbitration of investment disputes between Contracting States and nationals of other Contracting States." ICSID Convention art. I. By creating the Centre, the ICSID Convention acts as "a

---

[3] Article 52(5) provides that the Centre may if "the circumstances so require, stay enforcement of the award pending its decision."

[4] Under Article 52(3), the Chairman of the Centre appoints an ad hoc committee that has "the authority to annul the award or any part thereof on any of the grounds set forth in [Article 52(1)]."

[5] Article 53 provides that the "award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention."

mechanism for impartial resolution of disputes between investors and host governments[.]" *Hearings*. The Centre's jurisdiction extends "to any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting State, which the parties to the dispute consent in writing to submit to the Centre." ICSID Convention art. 25. Both the United States and Argentina are signatories to the ICSID Convention and both Argentina and Continental agreed that this dispute was covered by the ICSID Convention and hence subject to arbitration and resolution by the Centre.

Congress implemented the ICSID Convention by enacting 22 U.S.C. § 1650a,[6] which in pertinent part provides that

> An award of an arbitral tribunal . . . shall create a right arising under a treaty of the United States. The pecuniary obligations imposed . . . shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.

22 U.S.C. § 1650a(a). Thus, once a claimant receives a final award under the ICSID Convention, that party may then bring an action in a district court seeking enforcement. Indeed, "[t]he district courts of the United States (including the courts enumerated in section 460 of title 28) shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy." 22 U.S.C. § 1650a(b). Importantly, however, this statute is not itself a grant of subject matter jurisdiction; rather, as in the case of the Sherman Act, 15 U.S.C. § 4, § 1650a(b) simply makes clear that jurisdiction of matters arising under the statute is exclusive in the federal courts. For the instant suit, the grant of subject matter jurisdiction is found, as noted *infra*, not in § 1650a, but in 28 U.S.C. § 1330.

---

[6] As a non-self-executing treaty, the ICSID Convention required implementing legislation to give it domestic legal effect. *See Medellin v. Texas*, 552 U.S. 491, 521 (2008) (citing § 1650a as an example of Congressional implementation of a non-self-executing treaty that involved "complex commercial disputes").

### III.

#### A. Subject Matter Jurisdiction

Analysis properly begins with the question of subject matter jurisdiction, for absent such jurisdiction there is no power to adjudicate any issues. It is now well settled that the existence of subject matter jurisdiction in an action against a foreign state is governed by the Foreign Sovereign Immunities Act ("FSIA"), Pub. L. 94–583, § 2(a), Oct. 21, 1976, 90 Stat. 2891. As the Supreme Court noted in *Argentine Republic v. Amerada Hess Shipping Co.*, 488 U.S. 428, 439 (1989), the FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court[.]"[7] Further, "Congress' decision to deal comprehensively with the subject of foreign sovereign immunity in the FSIA, and the express provision in [28 U.S.C.] § 1604 that 'a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [28 U.S.C. §§] 1605-1607,'" precludes any other sources of jurisdiction over a foreign state. *Amerada Hess Shipping Co.*, 488 U.S. at 438. Thus, in actions against a foreign state, the subject matter jurisdiction analysis begins and ends with the FSIA. And this analysis begins with 28 U.S.C. § 1330,[8] which provides in pertinent part that the

> district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state . . . as to any claim

---

[7] Continental incorrectly argues that 22 U.S.C. § 1650a(b), read in conjunction with the federal question jurisdiction statute, 28 U.S.C. § 1331, provides an alternate source of subject matter jurisdiction. This argument fails because, as noted *supra*, § 1650a is not a grant of jurisdiction, but merely a mandate that jurisdiction, if it exists, may be exercised solely in the federal courts. Because Continental incorrectly relied on § 1331 in its pleading, it was granted leave to amend its pleading orally to add reliance on § 1330.

[8] The codification of the FSIA may lead to confusion by parties because in addition to adding Chapter 97, Jurisdiction Immunities of Foreign States, to Title 28 of the United States Code, the FSIA also amended Chapter 85, District Courts; Jurisdiction, by adding § 1330. The substantial separation in the Code between these two parts of the FSIA make it easy for a party researching bases for jurisdiction over a foreign state to overlook that § 1330 is a part of the FSIA.

> for relief . . . with respect to which the foreign state is not entitled to immunity either under [the FSIA] or under any applicable international agreement.

Thus subject matter jurisdiction exists only if a statutory exception from foreign sovereign immunity applies because "Sections 1604 and 1330(a) work in tandem: § 1604 bars federal and state courts from exercising jurisdiction when a foreign state is entitled to immunity, and § 1330(a) confers jurisdiction on district courts to hear suits brought by United States citizens and by aliens when a foreign state is not entitled to immunity." *Amerada Hess Shipping Co.*, 488 U.S. at 434. At "the threshold of every action in a district court against a foreign state, therefore, the court must satisfy itself that one of the exceptions applies — and in doing so it must apply the detailed federal law standards set forth in the Act." *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 493–94 (1983).

Here, there is subject matter jurisdiction as there exists an applicable exception to foreign sovereign immunity present, namely 28 U.S.C. § 1605(a)(6)(B), which provides that a

> foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which the action is brought . . . to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is . . . governed by a treaty . . . calling for the recognition and enforcement of arbitral awards.

Nor, as several courts have noted, is there any doubt that ICSID arbitral awards fall within this immunity exception.[9] Indeed, even before Congress enacted § 1605(a)(6)(B), courts recognized

---

[9] *See, e.g., Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 8168(CM), 2011 WL 666227 at *2 (S.D.N.Y., Feb. 10, 2011) ("Here, the immunity exception in Section 1605(a)(6)(B) applies because the Netherlands, Zimbabwe, and the United States are signatories to the Convention on the Settlement of Investment Disputes and Petitioners' arbitration award was obtained pursuant to that treaty."); *see also, Siag v. Arab Republic of Egypt*, No. M–82, 2009 WL 1834562 (S.D.N.Y., June 19, 2009) (entering a judgment recognizing an ICSID Convention award against Egypt).

that a foreign state's entering into the ICSID Convention waived foreign sovereign immunity.[10] Further, the application of § 1605(a)(6) to ICSID Convention awards accords with the treatment of awards under other treaties governing the recognition of arbitral awards.[11]

In sum, subject matter jurisdiction exists over the claim asserted here by Continental against Argentina by virtue of § 1330 and the exception to foreign sovereign immunity under § 1605(a)(6).

## B. Personal Jurisdiction

Next, analysis turns to the question of personal jurisdiction. Argentina incorrectly argues that personal jurisdiction is lacking because subject matter jurisdiction is lacking. Instead, the FSIA explicitly provides that personal jurisdiction is proper against a foreign sovereign if subject matter jurisdiction and proper service of process are present. Thus, § 1330(b) provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim . . . over which the district courts have jurisdiction . . . where service has been made under section 1608 of this statute." *See Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991) ("Under the

---

[10] *See Liberian E. Timber Corp. v. Government of Republic of Liberia*, 650 F.Supp. 73, 76 (S.D.N.Y. 1986) ("Liberia, as a signatory to the Convention, waived its sovereign immunity in the United States with respect to the enforcement of any arbitration award entered pursuant to the Convention."); *see also Maritime Int'l Nominees Est. v. Republic of Congo*, 693 F.2d 1094, 1103 n.14 (D.C. Cir. 1982) (discussing, without deciding, whether a foreign state's entering into the ICSID Convention "waive[d] its immunity from proceedings enforcing ICSID awards").

[11] The D.C. Circuit, for example, held that "because the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958] calls for enforcement of any arbitral award rendered within the jurisdiction of a signatory country, [§ 1605(a)(6)] applies by its terms to this action." *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118, 124 (D.C. Cir. 1999); *see also S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1302 (11th Cir. 2000); *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993) ("We agree . . . that the [New York] Convention is exactly the sort of treaty Congress intended to include in the arbitration exception. If the alleged arbitration agreement exists, it satisfies the requirements for subject matter jurisdiction under the Convention and FSIA.").

FSIA . . . personal jurisdiction equals subject matter jurisdiction plus valid service of process."); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1107 n.5 (5th Cir. 1985) ("where subject matter jurisdiction exists and where service of process is made pursuant to 28 U.S.C. § 1608, then personal jurisdiction exists").[12]

Because Argentina has not challenged service of process here, and because there exists subject matter jurisdiction under the FSIA, it follows that there is also personal jurisdiction over Argentina under the FSIA.

## C. Venue

Finally, analysis turns to the question of venue. Argentina argues that venue is improper in the Eastern District of Virginia, while Continental makes the novel argument that because Continental seeks merely recognition or confirmation—but not enforcement of the Award—this action could be brought in any jurisdiction without regard to 28 U.S.C. § 1391. In other words, Continental argues that because only recognition or confirmation of the Award is sought, these remedies may be sought in any federal court. At oral argument, Continental conceded that under its theory this action for recognition or confirmation could have been brought by Continental in a

---

[12] Argentina correctly refrains from asserting that the exercise of personal jurisdiction here violates due process. Every circuit court to address the issue has held "that foreign states are not 'persons' protected by the Fifth Amendment," and thus foreign states are not subject to the minimum contacts analysis prior to the exercise of personal jurisdiction. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002); *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009); *Abelesz v. Magyar Nemzeti Bank*, --- F.3d ---, 2012 WL 3590804 (7th Cir. 2012). In *Price*, the D.C. Circuit explained that because States are not persons under the Fifth Amendment, "absent some compelling reason to treat foreign sovereigns more favorably than 'States of the Union,' it would make no sense to view foreign states as 'persons' under the Due Process Clause." 294 F.3d at 96. Further, the *Price* court reasoned, "it would be highly incongruous to afford greater Fifth Amendment rights to foreign nations, who are entirely alien to our constitutional system, than are afforded to the states, who help make up the very fabric of that system." *Id.*

federal court in Fairbanks, Alaska or Hilo, Hawaii, and then Continental could seek enforcement in a federal district court where venue exists under 28 U.S.C. § 1391(f).

This argument is unpersuasive as there is no warrant for distinguishing between recognition, or confirmation on the one hand, and enforcement on the other. The implementing statute for the ICSID Convention recognizes no such distinction and provides only for the enforcement of ICSID awards. Specifically, the implementing statute, 22 U.S.C. § 1650a, provides that ICSID Convention awards are to be treated as state court judgments. Indeed, although the Federal Arbitration Act recognizes a distinction between confirmation and enforcement,[13] § 1650a specifically states that the Federal Arbitration Act shall not apply to ICSID awards. Because § 1650a instructs courts to enforce ICSID convention awards in the same manner as state court judgments, it is instructive to examine the manner in which those judgments are treated in federal court.

There is no mechanism for the recognition or confirmation by a federal court of a state court judgment. Unlike state courts that have domestication procedures,[14] there is no procedure in the federal courts for the recognition or confirmation of state court judgments. Although 28 U.S.C. § 1963 provides for the registration of other federal district court judgments, there is no parallel provision for state court judgments. Indeed, "[n]othing in the language of section 1963 grants authority to a district court to register judgments of any courts other than the [federal]

---

[13] Chapter Two of the Federal Arbitration Act, the implementing statute for the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, includes a provision for the confirmation of an award. 9 U.S.C. § 207 ("any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration").

[14] See, e.g., Va. Code Ann. § 8.01–465 et seq. (Uniform Enforcement of Foreign Judgments Act); Washington v. Anderson, 236 Va. 316, 319 (Va. 1988) (discussing proceedings to domesticate sister state judgments).

district courts or the Court of International Trade." *Fox Painting Co. v. N.L.R.B.*, 16 F.3d 115, 117 (6th Cir. 1994).[15] As one court put it, "giving a state's judgment full faith and credit, that is, preclusive effect in any proceeding before the court, is a far cry from making a judgment of a state court a federal judgment . . . Registration makes the judgment of another court one of the registering court." *W.S Frey Co.*, 899 F.Supp. at 1528. If a district court registers a state court judgment, "it would be crediting it with more than preclusive effect; it would be transforming it into a judgment of the United States District Court . . . . By such bootstrapping, the judgment then could be registered in a federal district wherein the judgment debtor has property." *Id.*

In short, the proper treatment of a state court judgment by a federal court is not recognition, or registration, but enforcement. It is axiomatic that "the proper form of action on a judgment of a sister state is debt or its statutory equivalent," 50 C.J.S. Judgments § 1368 (2012), because "it is only by an action on such a judgment that it can be enforced in another jurisdiction, since a judgment, as such, has no extraterritorial force or effect." 50 C.J.S. Judgments § 1364 (2012). In the federal courts, "a judgment of a state court may be sued on as a cause of action in a federal court having jurisdiction." *Id.*; *see also* Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, 18B Fed. Prac. & Proc. Juris. § 4469, at 79 (2d ed.) ("The most direct consequence of applying the full faith and credit statute is that a federal court must enforce a state court judgment when an action is brought for that purpose.").[16]

---

[15] *See also Marbury Law Group, PLLC v. Carl*, 729 F.Supp.2d 78, 83 (D.D.C. 2010) (cataloging cases addressing § 1963); *W.S. Frey Co., Inc. v. Precipitation Associates of Amer., Inc.*, 899 F.Supp. 1527, 1528 (W.D. Va. 1995) ("the only judgments that can be registered under that statute are judgments from other courts of the United States"); *Martin-Trigona v. Joel P. Bennett, P.C.*, 877 F.2d 60, 1989 WL 64126 *2 (Table) (4th Cir. 1989) ("that statute . . . only addresses the registration of federal judgments in other federal courts").

[16] *See, e.g., Depuy v. Depuy*, 686 F.Supp. 568, 569 n.1 (E.D. Va. 1988) (suit to enforce judgment of a state court judgment); *State of Wis. v. Maryland Nat'l Bank*, 734 F.2d 1015, 1016 (4th Cir.

To be sure, as Continental argues, the ICSID Convention appears to provide for recognition of an award on one hand and enforcement on the other. The short answer to this argument is that Congress in implementing the ICSID Convention provided a system for enforcement of awards, not for the recognition or confirmation of awards. And in this regard, Congress mandated that the proper method of enforcement of an ICSID arbitral award is the same as the enforcement of a state court judgment, which is a suit on the judgment as a debt. Given this, Argentina correctly challenges venue.

Section 1391(f) applies here, as it governs where a "civil action against a foreign state as defined in section 1603 (a) of this title may be brought[.]" 28 U.S.C. § 1391(f). Venue in an action against a foreign sovereign is proper:

> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
> (2) in any judicial district in which the vessel or cargo of a foreign state is situated;
> (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state; or
> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f). Subsections (1) through (3) are inapplicable in the present case; all relevant events, properties, and business entities are abroad. Thus, the United States District Court for the District of Columbia is the sole proper venue for this case.[17]

---

1984) ("State of Wisconsin sued in the Maryland federal district court to enforce a judgment for her inheritance taxes she had obtained in a Wisconsin state court against the defendants"); *North Carolina Nat'l Bank v. Marden*, 561 F.Supp. 698 (W.D. N.C. 1983) ("Plaintiff has brought this diversity action in federal court to enforce . . . [the] North Carolina state court's judgment that it obtained against the Defendant[.]").

[17] *See, e.g., Commissions Import Export S.A. v. Republic of the Congo*, No. 11 Civ. 6176, 2012 WL 1468486 (S.D.N.Y. April 27, 2012) (transferring venue to D.D.C. in an action seeking

This does not end the venue analysis, for where, as here, proper venue rests in another district, a district court may, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The district courts "generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants[,]" *Government of Egypt Procurement Office v. M/V Robert E. Lee*, 216 F.Supp.2d 468, 473 (D.Md. 2002), because "[t]ransfer would facilitate a more expeditious resolution of the merits of the controversy in a concededly proper forum and would avoid the costs and delay that would result from dismissal and refiling[.]" *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 594 (E.D. Va. 1992).[18] Here, there is no evidence that the case was brought here in bad faith, nor is there any evidence that Continental intended any harassment of Argentina. Continental only seeks recognition or confirmation of its arbitral award. Thus, transfer of venue is proper here as it avoids the unnecessary costs and delay that would result from dismissal and refiling in the District of Columbia.

## IV.

In summary, Argentina's motion must be denied in part and granted in part. It must be denied insofar as it challenges subject matter and personal jurisdiction. It must be granted insofar as it challenges whether venue in this action is proper. In the interest of justice, the case will be transferred to the proper venue, the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 1406(a).

---

recognition of an English judgment); *Wye Oak Tech., Inc. v. Republic of Iraq*, 1:09CV793 (AJT/JFA), 2010 WL 2613323 (E.D. Va. June 29, 2010) (transferring venue to D.D.C. where plaintiffs failed to establish that a substantial part of the events giving rise to the claim occurred in the Eastern District of Virginia).

[18] *See also* Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, 14D Fed. Prac. & Proc. Juris. § 3827 (3d ed.) ("Since the presumption should be in favor of transfer as the normal procedure, dismissal is only appropriate in unusual circumstances.").

An appropriate Order will issue.

Alexandria, VA
September 11, 2012

                                                         /s/
                                      T. S. Ellis, III
                                      United States District Judge